Estate Draft

## In The U.S. District Court for the Southern District of New York

| | |
|---|---|
| WILLIAM GRECIA,<br><br>Plaintiff,<br><br>v.<br><br>Brass Lion Entertainment, Inc., Justin Smith, Bryna Smith, Edward Robles, Roc Nation LLC<br><br>Defendants. | Case No. **25 CV 1484** |

## FOR BREACH OF CONTRACT AND TORTIOUS INTERFERENCE

### INTRODUCTION

I, William Grecia, am filing this Complaint pro se. This action arises from Defendants' wrongful breach of a valid Non-Disclosure Agreement (NDA) with Brass Lion Entertainment, executed on January 24, 2022, and Defendant Roc Nation's intentional interference with my business relationship with Brass Lion Entertainment and Zelle.

This filing is directly related to my Motion to Intervene currently pending before this Court in Case No. 1:24-cv-07975, before the Honorable Judge Analisa Torres. In that matter, I have submitted evidence alleging that Roc Nation, in concert with Justin Smith, Bryna Smith, and Edward Robles, has engaged in a covert scheme to misappropriate and launder embezzled funds obtained from my intellectual property dealings, including but not limited to a disputed Zelle QR licensing deal dating back to 2020.

As part of my prior Motion to Intervene, I have formally requested the Court to issue an order preventing Roc Nation from utilizing the accused stolen funds for litigation defense or further financial activities, as these funds are tied to the unlawful diversion of my rightful intellectual property proceeds. The wrongful use of these funds has allowed the Defendants to gain an unjust financial advantage, resulting in further harm to my business operations and licensing negotiations.

Brass Lion Entertainment and Roc Nation have knowingly engaged in fraudulent misrepresentation and tortious interference by poaching my business partner and leveraging confidential information obtained through the NDA in an unauthorized $30 million Microsoft deal. Their actions constitute a willful violation of contractual obligations and a coordinated effort to obstruct my legally protected business interests.

For these reasons, and in light of the pending intervention motion, I submit this Complaint seeking immediate injunctive relief to prevent further exploitation of

embezzled funds, as well as damages for breach of contract, tortious interference, and conspiracy.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1332 as this action involves federal questions and diversity of citizenship.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in this district and the Defendants conduct significant business here.

## JURISDICTION AND VENUE

6. Plaintiff, William Grecia, is a resident of Downingtown, PA and is representing himself pro se.

7. Defendant Brass Lion Entertainment, Inc. is a corporation organized under the laws of New Jersey with its principal place of business in New York (5th Floor, 667 Madison Avenue New York, NY 10065), and is a party to the NDA with Plaintiff.

8. Defendant Roc Nation, LLC is a limited liability company organized under the laws of New York with its principal place of business in New York at (540 w 26th street) and has completely poached and maliciously interfered with my contractual relationship with Brass Lion, Justin and Bryna Smith and Edward Robles.

## FACTUAL ALLEGATIONS

10. On or about January 24, 2022, Plaintiff entered into a Non-Disclosure Agreement with Brass Lion Entertainment, Inc. (the "NDA"), whereby Plaintiff provided

confidential information regarding his proprietary technology and business dealings. (See Brass Lion Unilateral NDA signed .)

11. Rather than safeguarding Plaintiff's confidential information as required, Brass Lion breached the NDA by disclosing Plaintiff's confidential information.

12. Defendant Brass Lion subsequently consummated a deal with Microsoft for $30 million, during which Plaintiff's confidential information was improperly shared.

13. As a direct result of Brass Lion's breach, Defendant Roc Nation obtained the unauthorized confidential information.

14. Roc Nation then used this information to illegally poach Plaintiff's business partner, working in concert with conspirators—specifically, Robles and the Smiths—to form a silent covenant aimed at disrupting Plaintiff's 100% owned Zelle IP license negotiation.

15. These actions have resulted in lost licensing monies, lost business opportunities and significant global financial harm to Plaintiff.

## CLAIMS FOR RELIEF

Count I – Breach of Contract (Breach of NDA)

    16. Plaintiff realleges and incorporates by reference paragraphs 1 through 15.

    17. The NDA between Plaintiff and Brass Lion was valid and binding.

    18. Brass Lion breached the NDA by disclosing Plaintiff's confidential information to Roc Nation and other parties in violation of its contractual obligations.

    19. As a proximate result of Brass Lion's breach, Plaintiff has suffered significant damages.

4

Count II – Tortious Interference and Conspiracy

20. Plaintiff realleges and incorporates by reference paragraphs 1 through 15.

21. Defendant Roc Nation knowingly and intentionally interfered with Plaintiff's business relationships by using the unauthorized confidential information obtained from Brass Lion.

22. In concert with conspirators (including poached collaugue Robles and the Smiths), Roc Nation formed a silent covenant to undermine, steal, and disrupt Plaintiff's Zelle IP license money and ongoing negotiations.

23. These wrongful actions have directly caused Plaintiff to suffer substantial financial and reputational harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant relief as follows:

**A. For Count I (Breach of NDA)** – Compensatory damages in the amount of **$30 million** (representing the known value of the MS deal) or an amount to be determined at trial, including all losses arising from Defendants' breach of contract;

**B. For Count II (Tortious Interference and Conspiracy)** – Compensatory and consequential damages in an amount to be determined at trial, including lost business opportunities and harm to Plaintiff's reputation;

**C.** An award of pre- and post-judgment interest, costs, and attorneys' fees (if applicable);

**D.** Injunctive relief preventing further unauthorized use or disclosure of Plaintiff's confidential information and interference with his business relationships;

**E.** Such other and further relief as the Court deems just and proper.

5

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


Date: February 18, 2025                                   */s/william grecia/*

*William Grecia*

*Pro Se*

# EXHIBITS

**From:** Grecia Family cs2cd@icloud.com
**Subject:** Re: Torress Letter of Stolen MVP funds, Roc Nation use of Illegal Funds for Legal Funding
**Date:** February 17, 2025 at 5:48 PM
**To:** alexspiro@quinnemanuel.com, mheller@doc.gov, Chris Joe Chris.Joe@bjciplaw.com, tbuzbee@txattorneys.com, dbergen@txattorneys.com, Torres_NYSDChambers@nysd.uscourts.gov, Bonny.Sweeney@usdoj.gov

> On Jan 26, 2025, at 6:20 PM, Grecia Family <cs2cd@icloud.com> wrote:
>
> **The Honorable Analisa Torres**
> United States District Court
> Southern District of New York
> 500 Pearl Street
> New York, NY 10007
>
> **Re: Request for Leave to File a Motion for Intervention**
>
> Dear Judge Torres,
>
> I am writing to respectfully request leave to file a Motion for Intervention pursuant to Rule 24 of the Federal Rules of Civil Procedure in cases related to Roc Nation, several matters currently pending before your Court.
>
> I, William Grecia, have substantial evidence indicating that funds used by Roc Nation in connection with this case are tied to embezzled and stolen assets from a 2020 Zelle QR licensing deal. The deal in question, which involved misrepresentation, and possibly signature fraud, aligned with a group I've never met, to defraud BofA and Early Warning Services, owner of Zelle.
>
> Attached to this letter is the original licensing attempt and supporting documentation sent to Early Warning Services and relevant parties, detailing the copyrights for Zelle QR works and my licensing terms. I have not authorized Roc Nation or any related entities to use these funds, nor have I issued a license for the associated intellectual property.
>
> The misappropriation of these funds directly impacts the interests of my estate and constitutes a material factor in this case. Allowing me to intervene will enable the Court to consider evidence that may have a significant bearing on its resolution.
>
> If permitted, I will file a formal Motion for Intervention along with supporting affidavits and documentary evidence to substantiate my claims. I am confident that my involvement will assist the Court in achieving a fair and equitable outcome.
>
> Thank you for your attention to this matter. I look forward to your guidance on how to proceed.
>
> We have asked President Trump to intervene this Murder For Hire Roc Nation plot as well.
>
> Thank You.
>
> I, William Grecia, hereby declare that the following evidence is a true copy of my emails to Zelle Management Committee staring in October of 2020.
>
> **Marcy Venture Partners Fund II (Early Warning Services Highjacked Deal See Attached)**
>
> - **Established:** 2021
> - **Fund Size:** $325 million
> - **Focus:** Continued investments in consumer products and services.
>
> Other MVP deposits may be illegal funds owned by my Estate after this initial accused Zelle 2021 payout to the wrong party.
>
> My Estate seeks seizure and transfer of our funds with this court and the expected RICO case the DOJ is expected to be prosecuting.
> <Grecia Family Estate Mail - Re_ Grecia's Zelle QR - copyrights now available for license - VAu001431689.pdf>
>
> <Screenshot 2025-01-26 at 6.06.25 PM.png>

**NON-DISCLOSURE AGREEMENT**

This Non-Disclosure Agreement ("**Agreement**") is effective as of ___1/24/2022___ ("**Effective Date**") by and between Brass Lion Entertainment, Inc. ("**Brass Lion**") and ___will Grecia___ ("**Recipient**"). Brass Lion and Recipient may be referred herein individually as a "party" or collectively as the "parties."

1. **Confidential Information**. "**Confidential Information**" means information, including without limitation a formula, invention, idea, pattern, compilation, program, code, software, list, device, method, technique, agreement or process, disclosed by Brass Lion or its Affiliates (collectively, the "**Disclosing Party**") to Recipient or its Affiliates (collectively, the "**Receiving Party**") that: (1) (a) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; or (2) is subject to a confidentiality agreement, non-disclosure agreement or other similar agreement with a third-party pursuant to which such information is the confidential information of such third party, however defined therein, and the existence of such third-party agreement is communicated to the Receiving Party.

2. **Use of Confidential Information; Obligations**. Receiving Party shall make use of the Confidential Information solely related to a potential or actual business relationship or transaction between the parties. Receiving Party agrees that it will not use, disseminate, or in any way disclose Confidential Information to any third party except to employees, contractors, consultants and/or agents of Receiving Party or any of its Affiliates (collectively, "**Personnel**"), on a strict need to know basis and solely to further the authorized purpose of this Agreement. Recipient represents that such Personnel are subject to non-disclosure obligations to Recipient or its applicable Affiliate at least as restrictive as those contained herein. Recipient shall be jointly and severally liable for any breach of this Agreement by its Affiliates or Personnel. The existence of any business negotiations, discussions, consultations or agreements between the parties shall not be disclosed without Brass Lion's prior written consent. Receiving Party agrees that it will treat all Confidential Information of Disclosing Party with the same degree of care as it accords its own confidential information of a similar nature, but in no event less than reasonable care. Upon discovery, Receiving Party will immediately notify Disclosing Party of any loss or unauthorized disclosure of Confidential Information. For purposes of this Agreement, "**Affiliate(s)**" means any corporation, company or other entity ("**Entity**") which controls, is controlled by or under common control with a party, where "control" means ownership or control, direct or indirect, of fifty percent (50%) or more of such Entity's voting capital, and any such Entity shall be an affiliate of such party only as long as such ownership or control exists; provided that no cessation of ownership or control will affect the rights and obligations of the parties with respect to the applicable Affiliate bound prior to the date of cessation of ownership or control.

3. **Exclusions**. Receiving Party's obligations under Section 2 shall not extend to Confidential Information Receiving Party can document: (i) was already in the public domain at or subsequent to the time it was disclosed by Disclosing Party, through no fault of Receiving Party; (ii) was rightfully in Receiving Party's possession, free of any restriction or confidentiality obligation at the time it was disclosed by Disclosing Party; (iii) was independently developed by Personnel of Receiving Party without any use or reference to Confidential Information of Disclosing Party; or (iv) was legitimately obtained by Receiving Party from a third-party not subject to confidentiality obligations to Disclosing Party.

4. **Compelled Disclosures**. Any disclosure made in response to a valid order by a court or other governmental body, or otherwise required by law, or necessary to establish the rights of either party under this Agreement shall not be deemed a breach of this Agreement, provided that prior to any such disclosure, Receiving Party shall promptly notify Disclosing Party in writing and reasonably cooperate with Disclosing Party to enable Disclosing Party to avoid or limit such disclosure to the extent legally permitted, and to obtain a protective order or other available protections to the extent such disclosure is required. Furthermore, the foregoing notwithstanding, Confidential Information of Disclosing Party shall not be

1

disclosed by Receiving Party, nor otherwise be admissible or be subject to discovery in any legal action or proceeding except as legally compelled, or as otherwise mutually agreed to in writing by the parties, and any such disclosure by Receiving Party shall be limited to the minimum disclosure legally required to be made in accordance with the respective governmental or court order.

5. **DTSA Exceptions**. Notwithstanding anything to the contrary set forth in this Agreement, Receiving Party understands that pursuant to 18 U.S.C. Section 1833(b), Receiving Party shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (1) is made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law; or (2) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

6. **Ownership and Rights**. As between the parties, Disclosing Party's Confidential Information is and shall remain the sole and exclusive property of Disclosing Party. Receiving Party shall not modify, reverse engineer, decompile, create other works from or disassemble any software programs contained in Confidential Information without Disclosing Party's prior written consent. Confidential Information shall not be reproduced in any form except as strictly required to carry out the purpose of this Agreement. Any reproduction by Receiving Party of any Confidential Information of Disclosing Party shall contain all confidential or proprietary notices or legends which appear on the original.

7. **No Rights Granted**. Receiving Party acknowledges and agrees that nothing in this Agreement shall be construed as granting any intellectual property rights, by license or otherwise, to any Confidential Information (or derivatives thereof) of Disclosing Party, or to any invention or any patent, copyright, trademark or other intellectual property that has issued or may issue, based on such Confidential Information (or derivatives thereof).

8. **Return or Destruction of Confidential Information**. Upon written request or the termination of this Agreement, all documents and other tangible materials relating to Confidential Information of Disclosing Party, including any derivatives of such Confidential Information created by Receiving Party (and all copies thereof) in the possession of Receiving Party or Personnel shall either be promptly returned or destroyed at the discretion of Disclosing Party and if destroyed shall be so certified upon request by an authorized representative of Receiving Party.

9. **Confidential Information of a Third Party**. Recipient shall not disclose to Brass Lion or its Affiliates any confidential information of a third party without such third party's prior written consent.

10. **No Warranty**. All Confidential Information is provided "AS IS" and without any warranty, express, implied or otherwise, regarding its accuracy or performance. All warranties of any kind, whether express or implied, including warranties of merchantability, fitness for a particular purpose, title and non-infringement, are hereby expressly disclaimed.

11. **No Obligation**. This Agreement shall not be construed to obligate either party to enter into any transaction with the other party.

12. **Term; Termination; Continuing Obligations**. The obligations set forth in this Agreement will continue beyond its termination and for a period of three (3) years thereafter; provided that with respect to trade secrets, the obligations shall continue for the longer of three (3) years following such termination or for so long as the information remains a trade secret of the Disclosing Party.

13. **Injunctive Relief**. Receiving Party acknowledges that any breach of this Agreement may cause Disclosing Party immediate and irreparable damage due to the unique nature of Confidential Information, and hereby agrees that Disclosing Party shall be entitled to injunctive relief under this Agreement, without the necessity of proving actual damages or posting bonds, in addition to any other relief as may be granted by a court of competent jurisdiction.

14. **Governing Law**. This Agreement, and any and all disputes arising from or related to this Agreement, shall be governed by the laws of the United States of America and State of New York, without regard to conflicts

of laws, and the Parties submit and consent to personal jurisdiction in the state and federal courts located in the State of New York, with venue in New York County, New York.

15. **Amendment; Waiver**. No term or provision of this Agreement may be amended without the prior written consent of each of the parties. Any amendment or waiver affected in accordance with this section shall be binding upon the parties and their respective successors and assigns. Failure to enforce any provision of this Agreement by either party shall not constitute a waiver of any term hereof by such party.

16. **Severability**. If any provision of this Agreement is found by a proper authority to be unenforceable or invalid, such provision shall be changed and interpreted so as to best accomplish the objectives of such unenforceable or invalid provision within the limits of applicable law or applicable court decisions.

17. **No Assignment**. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties, provided that Confidential Information of Disclosing Party may not be assigned without its prior written consent.

18. **Independent Contractors**. The parties agree that they are independent contractors, and nothing contained in this Agreement shall be construed to constitute the parties as partners, joint venturers, co-owners or otherwise as participants in a joint or common undertaking.

19. **Notices**. All notices permitted or required under this Agreement shall be in writing and shall be delivered by personal delivery, electronic mail or by certified or registered mail, return receipt requested, and shall be deemed given upon personal delivery, or five (5) days after deposit via courier or mail, or upon acknowledgment of receipt of electronic transmission.

20. **Integration; Counterparts**. This Agreement expresses the complete understanding of the parties with respect to the subject matter hereof and supersedes all prior proposals, agreements, representations and understandings, and may not be amended except in a writing signed by each of the parties. This Agreement may be executed in counterparts, and a PDF, photocopy or electronic signature shall be deemed an original for all purposes.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

| BRASS LION ENTERTAINMENT, INC. | RECIPIENT |
|---|---|
| By: *Bryna Dabby Smith* (DocuSigned) | By: *Will Grecia* (DocuSigned) |
| Its Authorized Signatory | Print Name: Will Grecia |
| Address: 5th Floor, 667 Madison Avenue | Address: 121 Lenora LN |
| New York, NY 10065 | Downingtown PA |
| Email: bryna@brasslionentertainment.com | Email: business@greciafamily.estate |

3



Grecia Family <business@greciafamily.estate>

## Fwd: Wepay v Bank of America

**Grecia Family** <business@greciafamily.estate>  Sun, Oct 30, 2022 at 9:42 AM
To: "justblaze@mac.com" <justblaze@mac.com>

The Bank of America rejected agreement... Forward to Bryna.

Thank You,

William Grecia
E: business@greciafamily.estate
P: (347) 764-3983

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.
[Quoted text hidden]

**3 attachments**

- **2022-10-24 WePay Global v. Bank of America N.A. Settlement Agreement.doc**
  150K

- **2022-10-24 DRAFT Fintech Innovation Associates LLC v. Bank of America N.A. - Stipulated Dismissal.docx**
  33K

- **2022-10-24 DRAFT Wepay Global LLC v. Bank of America N.A. - Stipulated Dismissal.docx**
  33K

 Gmail

Grecia Family <business@greciafamily.estate>

## Dualscan deal with Rocnation as my negotiator. Please have your lawyers look into my USPTO issues covering this deal. I need $6mln advance ASAP. Thank you.

**Grecia Family** <business@greciafamily.estate>    Sun, Nov 13, 2022 at 12:05 AM
To: Bryna Dabby Smith <bryna@brasslionentertainment.com>, Kevin Sullivan <kevinsullivan@unionpayintl.com>, steve.francis@dhs.gov

Thank You,

Lizzette Grecia
**E:** business@greciafamily.estate
**P:** (347) 764-3983

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain confidential and/or privileged information and may be legally protected from disclosure. If you are not the intended recipient of this message or their agent, or if this message has been addressed to you in error, please immediately alert the sender by reply email and then delete this message and any attachments. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.

6:08

+1 (917) 318-3055

As someone currently negotiating 30 million + dollars with Microsoft as though we don't NEED this deal to go through.... believe me, I get it!! 

Remember all the future acquisition stuff I flagged?? Yeaaaah they're being VERY sticky on that front

Everyone is moving to try to close the short form terms so we can get started and move most of the detail to the long form negotiation

So that part is going to take FOREVER

Don't worry about the house. It was only shown to you to inspire you. Reality is going to be what you build.

And if there's one thing you've learned - it's that what you build can be so much better than what already exists.

Start researching - find the land in time, and find a builder you like so that you can pull the trigger when you're ready

```
ERROR: rangecheck
OFFENDING COMMAND: image

STACK:

-dictionary-
```

PRESS FIRMLY TO SEAL   PRESS FIRMLY TO SEAL

# PRIORITY MAIL EXPRESS®

**UNITED STATES POSTAL SERVICE®** | PRIORITY MAIL EXPRESS™

**CUSTOMER USE ONLY**
FROM: (PLEASE PRINT)  PHONE (212) 372-0293
William Grecia
121 Lenora Ln
Downingtown PA 19335

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

## FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

RECEIVED FEB 21 20** PRO SE OFFICE SDNY

TO: (PLEASE PRINT)  PHONE ( )
Pro Se Intake Unit
United States Courthouse
500 Perl Street
New York NY 10007
ZIP+4® (U.S. ADDRESSES ONLY) 10007

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 Insurance included.

⬅ **PEEL FROM THIS CORNER**

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP



PS10001000006   EP13F October 2023
OD: 12 1/2 x 9 1/2



This package is made from post-consumer waste. Please recycle - again.