UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

WILLIAM GRECIA,

                   Plaintiff,

            - against -

BRASS LION ENTERTAINMENT, INC.,
JUSTIN SMITH, BRYNA SMITH,
EDWARD ROBLES, and ROC NATION
LLC,

                 Defendants.

------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

25 Civ. 1484 (JHR) (GS)

REPORT AND
<u>RECOMMENDATION</u>

**GARY STEIN, United States Magistrate Judge:**

     Plaintiff William Grecia ("Plaintiff" or "Grecia"), proceeding *pro se*, filed this

action against, *inter alia*, Defendants Brass Lion Entertainment, Inc. ("Brass

Lion"), Justin Smith, and Bryna Smith (collectively, the "Brass Lion Defendants")

on February 21, 2025. (Dkt. No. 1). Plaintiff voluntarily dismissed Brass Lion and

Justin Smith on April 5, 2025 (Dkt. Nos. 41–42), and voluntarily dismissed Bryna

Smith on June 18, 2025 (Dkt. No. 100). In between those voluntary dismissals, the

Brass Lion Defendants filed a motion to dismiss, which included a request for

sanctions—specifically, an award of attorneys' fees and an anti-filing injunction

preventing Grecia from commencing future litigation against them without court

permission. (Dkt. Nos. 53–54). Grecia, in turn, has filed his own motion for

sanctions against the Brass Lion Defendants' counsel. (Dkt. No. 146).

     For the reasons set forth below, this Court respectfully recommends that the

Brass Lion Defendants' request for monetary sanctions and an anti-filing injunction

against Grecia be **DENIED**, and that Grecia's motion for sanctions against the Brass Lion Defendants' counsel likewise be **DENIED**.[1]

## BACKGROUND

Grecia filed his Complaint on February 21, 2025, asserting two causes of action against the Brass Lion Defendants and two other named Defendants, Edward Robles ("Robles") and Roc Nation LLC ("Roc Nation"). (Dkt. No. 1). A redacted, public version of the Complaint may be found at Docket Number 30, Exhibit 1 ("Compl.").[2]

Grecia's first cause of action, for breach of contract, was asserted against Brass Lion and alleged that Brass Lion disclosed confidential business information to Roc Nation and others in violation of a Non-Disclosure Agreement ("NDA") between Plaintiff and Brass Lion. (Compl. ¶¶ 16–19). Grecia's second cause of action, for tortious interference and conspiracy, alleged that Roc Nation unlawfully used the confidential information obtained from Brass Lion. (*Id.* ¶¶ 20–21). It further alleged that Roc Nation, together with the Smiths and Robles, conspired to

---

[1] On February 27, 2025, the Honorable Jennifer H. Rearden referred this action to the undersigned for general pretrial supervision and dispositive motions, *i.e.*, those requiring a report and recommendation. (Dkt. No. 6). The Second Circuit has not resolved the issue of whether a magistrate judge has the authority to impose sanctions under Rule 11 or the court's inherent authority. *See Kiobel v. Millson*, 592 F.3d 78 (2d Cir. 2010); *Freedman v. Rakosi*, No. 23 Civ. 472 (AT) (SDA), 2024 WL 4559903, at *2 n.1 (S.D.N.Y. Aug. 14, 2024). In addition, a litigation bar is a form of injunction, which magistrate judges normally lack authority to impose. *See* 28 U.S.C. § 636(b)(1)(A); *see also Brady v. Goldman*, No. 16 Civ. 2287 (GBD) (SN), 2017 WL 496083, at *1 (S.D.N.Y. Feb. 3, 2017) (noting magistrate judge's issuance of a report and recommendation recommending entry of a filing injunction against plaintiff). Accordingly, the Court issues this ruling in the form of a report and recommendation rather than by an opinion and order.

[2] At the request of the Brass Lion Defendants, the Court issued an Order on April 1, 2025 placing under seal the original Complaint, as well as several other documents filed by Grecia, because they contained personal contact information of the Smiths, and allowing the Brass Lion Defendants to fie redacted versions of these documents. (Dkt. No. 34).

2

misappropriate funds obtained from Grecia's intellectual property. (*Id.* ¶ 22; *see also id.* at p. 2). Grecia stated that this action was related to his motion to intervene in another case in this District, *Doe v. Combs*, No. 24 Civ. 7975 (AT) (S.D.N.Y.), a lawsuit by an alleged victim of sexual assault against Sean Combs and Shawn Carter, the founder of Roc Nation. (*Id.* at 2; Dkt. No. 2).[3]

Three days after commencing this action, Grecia filed an "emergency motion" seeking a temporary restraining order and preliminary injunction against Defendants and certain non-parties. (Dkt. No. 7). The motion sought interim relief related to the alleged misappropriation of funds from Plaintiff. (*Id.* at 3). In a report and recommendation dated March 3, 2025, the undersigned found Grecia's motion improper because, *inter alia*, he had not yet served the Complaint or the motion papers on any of the Defendants or non-parties. (Dkt. No. 9 at 4, 5–6). In the course of its ruling, the Court also noted that the plain terms of the NDA (a copy of which was attached to the Complaint) governed "confidential information to be disclosed *by Brass Lion to Plaintiff*" and imposed no restrictions on Brass Lion's disclosure or use of information provided to Brass Lion by Plaintiff. (*Id.* at 2 n.1 (emphasis in original)).[4]

Forty-three days after commencing this action, and eleven days after the

---

[3] A review of the docket in that case shows that Plaintiff neither filed nor was permitted to file a motion to intervene and that the case was dismissed with prejudice on February 18, 2025. (Dkt. No. 9 at 3 n.2).

[4] Prior to the Brass Lion Defendants' appearance in this case, Grecia also filed a series of motions seeking, *inter alia*, discovery of materials from Defendants and others. (Dkt. Nos. 10, 11, 15, 16). The Court denied these motions as frivolous without requiring a response from Defendants. (Dkt. No. 17).

Brass Lion Defendants appeared through counsel (Dkt. Nos. 23–24), Grecia

voluntarily dismissed his claims against Brass Lion and Justin Smith on April 5,

2025.  (Dkt. Nos. 40–41; *see also* Dkt. No. 48–49 (Court's April 9, 2025 orders

directing Clerk to terminate Brass Lion and Justin Smith)).  On April 8, 2025,

Grecia emailed the Brass Lion Defendants' outside counsel of record in this action,

indicating that he had also sought to voluntarily dismiss Byrna Smith, but events

had "unintentionally complicated the voluntary dismissal process [he] had planned

for her."  (Dkt. No. 55 Ex. 3).  By way of "provid[ing] some background and clarity

on the original intent of this case," Grecia's April 8 email stated that it was his

"intention from the outset . . . to engage the Court solely to place the NDA issue on

record" and "make a formal election of [his] CVRA [Crime Victims' Rights Act]

rights,"[5] and that his "next intended step was to voluntarily dismiss all parties[.]"

(*Id.*).

On April 11, 2025, all three Brass Lion Defendants nonetheless filed a motion

to dismiss Plaintiff's Complaint.  (Dkt. Nos. 53–54 ("Def. Br.")).  Within the motion

to dismiss, the Brass Lion Defendants included a request for sanctions.  Specifically,

the Brass Lion Defendants sought an award of attorneys' fees on the basis that

---

[5] Plaintiff alleges that he is the victim of identity theft, racketeering, and financial fraud and embezzlement.  (Dkt. No. 29).  Plaintiff seeks restitution under the CVRA for these alleged crimes, specifically to "recover $128 billion in IP damages resulting from a conspiracy to eliminate Plaintiff's Section 289 design patent rights and suppress legal remedies," among various other remedies, including assignment of an Assistant U.S. Attorney.  (Dkt. No. 104 at 2; *see also* Dkt. Nos. 64, 65). Grecia's claims on this point are varied, confused, and without basis in law, not least of which because "the CVRA does not grant victims any rights against individuals who have not been convicted of a crime," and Grecia has not pointed to any individuals, in this case or otherwise, convicted of crimes in which he was a victim.  *In re W.R. Huff Asset Mgmt. Co., LLC*, 409 F.3d 555, 564 (2d Cir. 2005).  Moreover, "the CVRA provides no private right of action."  *Alcala v. Off. of Crime Victims Servs.*, No. 23 Civ. 9507 (EK) (LB), 2025 WL 43162, at *3 (E.D.N.Y. Jan. 7, 2025).

4

Grecia's claims against them were frivolous and sought an anti-filing injunction based on Grecia's litigation history. (Def. Br. at 9–20). They argued, *inter alia*, that "[t]he record shows that Plaintiff filed this case in order to harass the Smiths and extort them into paying him to stop." (*Id.* at 9).

The Court issued an Order on April 24, 2025, noting the lack of clarity as to the procedural posture of the case. (Dkt. No. 66 at 2). The Order directed (1) Grecia to inform the Court whether he intended to continue to prosecute this case or voluntarily dismiss it under Fed. R. Civ. P. 41(a)(1)(A)(i) and (2) the Brass Lion Defendants to inform the Court whether they intended to continue to seek sanctions and a litigation bar were Grecia to voluntarily dismiss the action, and if so on the basis of what authority. (*Id.* at 2–3). Both sides responded as required on May 8, 2025. The Brass Lion Defendants reaffirmed their intent to move forward with their request for sanctions, even if Plaintiff voluntarily dismissed his claims, referencing this Court's inherent authority and Federal Rule of Civil Procedure 11. (Dkt. No. 70).

Grecia's response stated that he did intend to continue to prosecute the action. (Dkt. No. 72). In addition, on that same day, Grecia filed his own motion for Rule 11 sanctions against the Brass Lion Defendants' outside counsel, Alon Lifshitz, Esq., and his law firm, Cohen & Gresser LLP. (Dkt. No. 73). Grecia also filed a response to the Brass Lion Defendants' request for sanctions. (Dkt. No. 74). Grecia's response, *inter alia*, noted that he had not received any Rule 11 "safe harbor" notice from Defendants. (*Id.*).

5

Despite having indicated his intent to continue with the litigation in his May 8, 2025 response to the Court, on May 13, 2025, Grecia moved to have the Brass Lion Defendants' Motion to Dismiss denied as moot, claiming that he had moved to voluntarily dismiss Defendant Bryna Smith on April 25, 2025. (Dkt. No. 77). Upon inquiry, this Court learned from the Pro Se Intake Unit that such a request was made, but could not be filed due to issues with the PDF Grecia submitted. (Dkt. No. 78). Accordingly, Grecia was ordered to move again to dismiss Defendant Bryna Smith, which he did on June 18, 2025. (Dkt. No. 100). In the interim, Grecia withdrew his motion for Rule 11 sanctions. (Dkt. No. 81).

On June 4, 2025, the Brass Lion Defendants filed a letter stating that they had served Grecia with a Rule 11 letter by mail that same day. (Dkt. No. 85). Additionally, because Plaintiff is *pro se* and has consented to electronic service, the Brass Lion Defendants noted that Grecia was also served via ECF. (*Id.*).

On June 25, 2025, Judge Rearden entered an Order dismissing Bryna Smith, terminating several open motions, and ordering Plaintiff to file a consolidated opposition to the sanctions motion by no later than July 22, 2025. (Dkt. No. 102). The following day, Grecia submitted his opposition, arguing that the record "does not support a finding of abusive or frivolous conduct." (Dkt. No. 104 ("Pl. Opp.") at 2).[6] On July 7, 2025, the Brass Lion Defendants submitted a reply in support of

---

[6] Grecia's Opposition is titled "Plaintiff's Opposition to Defendants' Request for a Filing Injunction," and his arguments speak to the Brass Lion Defendants' request for an anti-filing injunction. However, given the special solicitude due to *pro se* parties' arguments, the Court construes the Opposition as also defending against the Brass Lion Defendants' request for fees, as it responds to both requests equally. Accordingly, and particularly given Grecia's May 8, 2025 letter, which noted the Brass Lion Defendants' non-compliance with the Rule 11 safe-harbor provision, the Court rejects

their motion.  (Dkt. No. 106 ("Def. Reply")).  In their Reply, the Brass Lion

Defendants point to nearly a dozen specific filings in this case that they allege

independently show violations of Rule 11(b)(1), 11(b)(2), and 11(b)(3), outside of

Grecia's Complaint.  (*Id.* at 2–5).  The Brass Lion Defendants claim that it is

"simply unfair for the Smiths to have to hire lawyers in order to deal" with this

case.  (*Id.* at 5).

On September 11, 2025, Grecia filed his second motion for sanctions against

the Brass Lion Defendants' counsel.  (Dkt. No. 146 ("Pl. Mot")).  Grecia alleges that

Lifshitz and Cohen & Gressler "knowingly weaponized a Bergen County protective

order proceeding as a litigation trap," leading to a "false arrest" of Grecia on March

20, 2025, five days before Lifshitz entered his appearance in this case.  (Pl. Mot. at

1).  Grecia alleges that this arrest was "designed to incapacitate Plaintiff through

incarceration," thereby preventing him from proceeding in the present case.  (*Id.*).

The Brass Lion Defendants filed their Opposition on September 17, 2025 (Dkt. No.

147 ("Def. Opp.")), and Grecia filed his Reply the next day.  (Dkt. No. 148 ("Pl.

Reply")).

So far as the docket reveals, the two other named Defendants, Robles and Roc

Nation, were never served with the Summons and Complaint and never appeared in

the action.  This Court twice issued an Order to Show Cause directing Grecia to

explain why he had not served Robles and Roc Nation, on July 11, 2025 and

September 10, 2025, respectively.  (Dkt. Nos. 103, 135).  After Plaintiff responded to

---

the Brass Lion Defendants' claim that "Plaintiff does not appear to dispute that he should be ordered
to pay Defendants' attorneys' fees."  (Def. Reply at 5).

the latter Order without indicating that he had served Robles or Roc Nation, and stated he intended to file separate lawsuits in the future (Dkt. No. 138), Judge Rearden entered an Order dismissing the claims against Robles and Roc Nation without prejudice on November 7, 2025.  (Dkt. No. 150).  Accordingly, all of Plaintiff's claims in this case have now been dismissed.

## LEGAL STANDARD

Notwithstanding the dismissal of Plaintiff's claims, the Court retains jurisdiction over collateral issues such as sanctions.  *Rice v. NBCUniversal Media, LLC*, No. 19 Civ. 447 (JMF), 2019 WL 3000808, at *4 (S.D.N.Y. July 10, 2019); *see Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) (holding that "district courts may enforce Rule 11 even after the plaintiff has filed a notice of dismissal"); *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 134 (2d Cir. 2014) (holding that "voluntary dismissal of a complaint . . . does not preclude the district court from considering collateral issues such as sanctions"); *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 98 (2d Cir. 2003) ("Whenever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters[.]").

Federal Rule of Civil Procedure 11(b) provides, in pertinent part:

By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

8

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).

"If a party is found to have violated Rule 11, they may be subject to sanctions." *De Oliviera v. Tenet Healthcare*, No. 25 Civ. 1683 (VSB) (GS), 2025 WL 3241217, at *9 (S.D.N.Y. Nov. 20, 2025) (citing Fed. R. Civ. P. 11(c)).  Such sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4). Sanctions "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  *Id.*  However, Rule 11 sanctions should be levied cautiously and applied only when "a particular allegation is utterly lacking in support."  *In re Highgates Equities, Ltd.*, 279 F.3d 148, 154 (2d Cir. 2002) (internal quotation marks omitted); *see also Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158 (2d Cir. 2010).

Notably, Rule 11(c)(2) contains a "safe harbor" provision requiring that the motion for sanctions "be sent to the opposing party but not actually filed with the Court if the challenged paper or action is withdrawn or appropriately corrected within 21 days after service of the motion."  *Qiu v. Shanghai Cuisine, Inc.*, No. 18

9

Civ. 5448 (ER), 2021 WL 3929242, at *2 (S.D.N.Y. Sept. 1, 2021).[7]  "As the Second Circuit has noted, '[t]he safe-harbor provision is a strict procedural requirement.'" *Id.* (quoting *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012)).  "Any motion seeking Rule 11 sanctions that does not comply with these provisions must be denied."  *Intravaia v. Rocky Pt. Union Free Sch. Dist.*, No. 12 Civ. 642 (DRH) (AKT), 2014 WL 7338849, at *3 (E.D.N.Y. Dec. 22, 2014).

"Courts have wide discretion in deciding when sanctions are appropriate." *Garcia v. Bilotta*, No. 23 Civ. 4146 (VSB), 2025 WL 2614071, at *4 (S.D.N.Y. Sept. 10, 2025).  "Even if the district court concludes that the assertion of a given claim violates Rule 11, . . . the decision whether or not to impose sanctions is a matter for the court's discretion."  *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004); *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) ("[S]anctions under Rule 11 are discretionary, not mandatory.").

"[A] court has a [second] means at its disposal for sanctioning improper conduct: its inherent power."  *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991). "'Separate from Rule 11, a district court has the inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for

---

[7] Rule 11(c)(2) provides: "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.  If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."

oppressive reasons.'" *Braun ex rel. Advanced Battery Techs., Inc. v. Zhiguo Fu*, No. 11 Civ. 4383 (CM) (DF), 2015 WL 4389893, at \*17 (S.D.N.Y. July 10, 2015) (quoting *Zlotnick v. Hubbard*, 572 F. Supp. 2d 258, 272 (N.D.N.Y. 2008)).  This power stems from the courts' need to be able "'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)).

"Rule 11's safe-harbor provision does not override a district court's inherent authority to impose sanctions for bad-faith litigation conduct." *Weiss v. Yotta Techs., Inc.*, No. 22 Civ. 8569 (JPO), 2024 WL 4285849, at \*4 n.2 (S.D.N.Y. Sept. 25, 2024).  However, sanctions imposed under the court's inherent authority must meet a higher standard.  "Underlying the Second Circuit's approach is the recognition that sanctions imposed pursuant to the court's inherent authority may be levied only upon a finding of bad faith, obviating the requirement for a safe harbor that protects attorneys and parties from much more innocent conduct that may be sanctionable under Rule 11." *Id.*

As with Rule 11 sanctions, "[t]he decision to issue sanctions under [its inherent power] lies within this Court's broad discretion." *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018) (citing *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 634 (S.D.N.Y. 2016)).  Even where courts determine that sanctionable conduct has occurred, they need not impose sanctions, as even a "'finding that someone has engaged in sanctionable conduct is a finding that itself carries a sting.'" *New V & J Produce Corp. v. NYCCaterers Inc.*, No. 13 Civ. 4861

(ER), 2014 WL 5026157, at *9 (S.D.N.Y. Sept. 29, 2014) (quoting *Milani v. Int'l Bus. Machs. Corp.*, No. 02 Civ. 3346 (MBM), 2004 WL 3068451, at *2 (S.D.N.Y. Dec. 30, 2004)).

## DISCUSSION

### A.     Defendants' Request for Sanctions Under Rule 11

The Court need not, and indeed cannot, engage with the substance of the Brass Lion Defendants' arguments that Grecia's Complaint and other filings violated his obligations under Rule 11.  For three reasons, Defendants' request for Rule 11 sanctions is procedurally deficient under Rule 11's safe-harbor provision, each of which is independently sufficient to warrant denial of their request.

First, Rule 11's safe-harbor provision requires that "[t]he motion must be served under Rule 5" at least 21 days before it is filed with the court.  Fed. R. Civ. P. 11(c)(2); *see Qiu*, 2021 WL 3929242, at *2.  "This 21-day period provides a safe harbor for Plaintiff to reconsider its position before Defendant formally seeks sanctions," thereby "'forestall[ing] unnecessary motion practice[.]'"  *Jemal's Boulevard, LLC v. VJ & O'Neal Enters., LLC*, No. 22 Civ. 102S (WMS), 2022 WL 1204674, at *4 (W.D.N.Y. Apr. 22, 2022) (quoting 5A Wright & Miller, *Federal Practice and Procedure* § 1337.2, at 494 (2018)).

Courts in the Second Circuit are resoundingly clear that a failure to comply with this requirement is "fatal" to a motion for sanctions under Rule 11.  *Diamonds.net LLC v. Idex Online, Ltd.*, 254 F.R.D. 475, 476 (S.D.N.Y. 2008); *see also Adams v. Taylor*, 793 F. Supp. 3d 486, 489 (W.D.N.Y. 2025) ("Without a

certificate of service or other evidence that Defendant complied with Rule 11(c)(2), the Court must deny Defendant's motion for sanctions."); *Jemal's Boulevard*, 2022 WL 1204674, at *4 ("Absent an allegation of compliance with that portion of the Rule, Defendant's Motion for Sanctions is denied."); *Behrens v. JPMorgan Chase Bank N.A.*, No. 16 Civ. 5508 (VSB), 2019 WL 1437019, at *14 (S.D.N.Y. Mar. 31, 2019) (dismissing sanctions motions where there was "no indication that [defendants] or [p]laintiffs complied with Rule 11's procedural requirement that a motion for sanctions be served on the offending party twenty-one days before it is filed with the court"); *Lipiro v. Remee Prods.*, 75 F. Supp. 2d 174, 177 (S.D.N.Y. 1999) (citing cases). Indeed, the Second Circuit has held that a district court's award of sanctions in the face of such a failure constitutes an abuse of discretion. *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 141–42 (2d Cir. 2002).

The Brass Lion Defendants do not allege compliance with the safe-harbor provision. Rather, they state that they mailed a letter to Grecia, well after their motion seeking sanctions was filed, and request that the date of mailing be considered the operative date for their safe harbor filing. (Dkt. No. 85 at 1). Since Grecia did not withdraw the contested filings within 21 days of this notice, the Brass Lion Defendants apparently contend that they have complied with Rule 11's safe-harbor provision. (*Id.* at 1). They are wrong.

The Court has found no authority for the notion that a Rule 11 motion can comply with the safe-harbor provision through subsequent notice, nor do the Brass Lion Defendants cite any such authority. In fact, the Court has not even found any

instances of a party claiming that such service could be sufficient.  Such a suggestion not only contradicts the plain language of Rule 11, but also would run afoul of cases finding that notice on the same day of filing is insufficient.  *See, e.g.*, *Semon v. Brandon*, No. 08 Civ. 499 (ADS) (AKT), 2008 WL 11450574, at *4 (E.D.N.Y. Nov. 15, 2008); *Ulloa v. United States*, No. 1:06 Civ. 751 (NAM) (RFT), 2007 WL 2764792, at *6 (N.D.N.Y. Sept. 20, 2007); *Loccenitt v. Labrake*, No. 14 Civ. 6703 (FPG), 2016 WL 1301185, at *1 (W.D.N.Y. Mar. 31, 2016).

Second, even if service under Rule 11(c)(2) after the filing of the motion were permissible, the Brass Lion Defendants did not serve Grecia with what the Rule required them to serve.  Rule 11 specifies that the party seeking sanctions under the Rule must send "the motion" to the opposing party.  Fed. R. Civ. P. 11(c)(2). Here, however, the Brass Lion Defendants only served Grecia with a letter demanding dismissal of the Complaint and withdrawal of Grecia's allegedly false statements.  (Dkt. No. 85 Ex. A).

The Second Circuit has made clear that "[a]n informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period."  *Star Mark*, 682 F.3d at 175; *see also L.B. Foster Co. v. Am. Piles, Inc.,* 138 F.3d 81, 89–90 (2d Cir. 1998) (request for sanctions in letter without separate service of motion did not comply with Rule 11's requirement that sanctions motion be made separately); *Kumaran v. Nat'l Futures Ass'n*, No. 20 Civ. 3668 (GHW) (SDA), 2024 WL 3429128, at *2 (S.D.N.Y. July 16, 2024) (rejecting Rule 11 sanctions where movant only served a "Safe Harbor Notice"

without a cross-motion for sanctions); *Castro v. Mitchell*, 727 F. Supp. 2d 302, 307 (S.D.N.Y. 2010) ("Courts have held that even a letter detailing the nature of the conduct which purportedly violates Rule 11 and threatening to file a motion for sanctions cannot constitute notice under Rule 11." (citing cases)); *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 309 (S.D.N.Y. 2005) ("[T]he plain language of the rule states explicitly that service of the motion itself is required to begin the safe harbor clock—the rule says nothing about the use of letters.").

The Brass Lion Defendants do not allege that they served Grecia with a copy of the motion itself, only their "enclosed letter demanding that he voluntarily dismiss the Complaint against Defendants with prejudice, and withdraw other false statements made in his letters and motions to the Court." (Dkt. No. 85 at 1). This was not merely a technical violation. While it is true that the Brass Lion Defendants had previously served their motion to dismiss and supporting memorandum of law on Grecia (which included their request for sanctions), the relevant section of that memorandum alleged only that Grecia violated Rule 11 through his filing of the Complaint. (Def. Br. at 9). By contrast, the Brass Lion Defendants' belated Rule 11 letter not only challenged the Complaint, but also alleged that Grecia had filed "letters and motions that include false statements" and demanded that Grecia withdraw these filings as well as the Complaint. (Dkt. No. 85 Ex. A). Those filings and alleged false statements were not mentioned in the Brass Lion Defendants' previously filed motion.

Third, the Brass Lion Defendants also failed to adequately comply with Rule

11 because they included their request for sanctions *within* their motion to dismiss. (*See* Def. Br. at 9–20). Under Rule 11(c)(2), a "motion for sanctions *must be made separately* from any other motion[.]" (Emphasis added).

On this point, too, the Second Circuit has made clear that it requires adherence to the plain language of Rule 11, finding "no legal basis to support the[] argument" that a motion for sanctions under Rule 11 can be filed concurrently with another motion. *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 52 (2d Cir. 2008). And the Second Circuit has found the imposition of Rule 11 sanctions absent a separate motion to constitute an abuse of discretion. *L.B. Foster Co.*, 138 F.3d at 89–90 (reversing the district court's decision to impose sanctions where the movant "included its request for sanctions in its letter requesting a Rule 54(b) certification, thereby failing to give [the non-movant] the separate notice referred to in Rule 11"); *see also Cole v. Stephen Einstein & Assocs., P.C.*, 365 F. Supp. 3d 319, 335 (W.D.N.Y. 2019) ("Defendants' motion for Rule 11 sanctions must be dismissed because it was not made separately from their motion to dismiss."); *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 414–15 (S.D.N.Y. 2016) ("[D]efendants' request for attorneys' fees under Rule 11 was made together with the motion to dismiss rather than as a separate motion, and for that reason alone it must be denied."); *Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*, No. 12 Civ. 642 (DRH) (AKT), 2014 WL 7338849, at *6 (E.D.N.Y. Dec. 22, 2014) (stating that "service of a separate motion for sanctions" is necessary to comply with Rule 11's safe-harbor provision).

16

For all these reasons, this Court respectfully recommends that the Brass Lion Defendants' request for sanctions under Rule 11 be denied.

### B. Defendants' Request for Sanctions Pursuant to the Court's Inherent Authority

Aside from their invocation of Rule 11, the Brass Lion Defendants ask the Court to issue the same sanctions pursuant to the Court's inherent authority. (Def. Br. at 9–10, 11). The basis for these sanctions is identical to those described above.

As an initial matter, the Court notes that the Brass Lion Defendants cannot simply repackage their Rule 11 sanctions request as a request for sanctions under the Court's inherent authority. As noted above, the Brass Lion Defendants failed to comply with the Rule 11 safe-harbor provision, depriving Grecia of the ability to respond to a Rule 11 warning by dismissing his claims, as he ultimately decided to do. It lies ill in the mouth of the Brass Lion Defendants to advocate for the same result under the Court's inherent authority. This would effectively allow them to circumvent Rule 11's requirements of procedural fairness, which, as discussed above, are mandatory. *See Chambers*, 501 U.S. at 56 (suggesting that court's inherent authority to impose sanctions should not be used as "an end run around the notice requirements of Rule 11").

Nonetheless, the Court recognizes that, as noted above, "Rule 11's safe-harbor provision does not override a district court's inherent authority to impose sanctions for bad-faith litigation conduct." *Weiss*, 2024 WL 4285849, at *4 n.2; *see also ED Cap., LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 82 (S.D.N.Y. 2016) ("Having found that Rule 11 sanctions are unwarranted in this case [due to non-

compliance with the safe-harbor provision], the Court will consider Bloomfield's application for attorneys' fees pursuant to the Court's inherent authority to supervise and control its proceedings."). Applying the higher standard that governs inherent-authority sanctions determinations, the Court finds that sanctions are unwarranted here, and thus respectfully recommends that the Brass Lion Defendants' request for either attorneys' fees or a litigation bar be denied.

### 1. Defendants' Request for Attorneys' Fees

"[A]ttorneys' fees are . . . 'one permissible sanction' available when a court exercises its inherent powers 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Steeger v. JMS Cleaning Servs., LLC,* No. 17 Civ. 8013 (DLC), 2018 WL 1363497, at *2 (S.D.N.Y. Mar. 15, 2018) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017)). "'[T]he court's inherent power may be made against an attorney, a party, or both.'" *Prevezon Holdings*, 305 F. Supp. 3d at 478 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).

"However, the Supreme Court has made clear that a court's inherent power to sanction must be exercised with restraint and discretion." *Thomas v. McCabe, Weisberg & Conway, LLC*, No. 24 Civ. 7504 (MMG) (GS), 2025 WL 2588749, at *16 (S.D.N.Y. Aug. 15, 2025) (internal quotations omitted), *R&R adopted*, 2025 WL 2592351 (S.D.N.Y. Sept. 8, 2025); *see Chambers*, 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion."). "For this reason, the Second Circuit 'has always required a particularized showing

18

of bad faith to justify the use of the court's inherent power.'" *Braun*, 2015 WL 4389893, at \*17 (quoting *Int'l Bhd. of Teamsters*, 948 F.2d at 1345).  "Accordingly, as a general matter, a court should not impose sanctions on a party or attorney pursuant to its inherent authority unless it finds, by clear and convincing evidence, that the party or attorney knowingly submitted a materially false or misleading pleading, or knowingly failed to correct false statements, as part of a deliberate and unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly."  *Id.*; *see also Sierra Club v. U.S. Army Corps of Engineers*, 776 F.2d 383, 390 (2d Cir. 1985) ("Under the law in this Circuit, to award fees under the bad faith exception a court must find clear evidence that the losing party's claims were 'entirely without color and made for reasons of harassment or delay or for other improper purposes.'" (quoting *Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977)).

"The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice."  *Sierra Club*, 766 F.2d at 390.  "Under this test, a claim is 'entirely without color' when it lacks any legal or factual basis."  *Id.* (quoting *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980) (per curiam)).  "While there is no precise definition of 'improper purpose' it may be evidenced by conduct occurring either before or during trial."  *Id.*

In addition, a federal court's inherent authority to sanction a litigant for bad-faith conduct by ordering it to pay the other side's legal fees "is limited to the fees the innocent party incurred solely because of the misconduct—or put another way,

19

to the fees that party would not have incurred but for the bad faith." *Goodyear*, 581 U.S. at 103–04. Absent such a "causal connection," a fee award is improper. *Id.* at 109; *see also Rhee-Karn v. Lask*, 797 F. Supp. 3d 343, 375 (S.D.N.Y. 2025) (applying *Goodyear* and denying application for attorney's fees as sanction under court's inherent authority where defendant failed to show that she "incurred any expenses that she would not have incurred but for" plaintiff's alleged misconduct).

Here, the Brass Lion Defendants' request for sanctions founders first and foremost on the causation requirement. The record makes clear that, had the Brass Lion Defendants complied with the safe-harbor provision and sent Grecia a Rule 11 letter before moving to dismiss, Grecia would have voluntarily dismissed his claims against them. In fact, prior to the filing of the Brass Lion Defendants' motion to dismiss on April 11, 2025—and without the prompting of a Rule 11 warning—Grecia had already dismissed Brass Lion and Justin Smith. (Dkt. Nos. 41–42). He did not dismiss Bryna Smith until after the filing of the motion to dismiss (Dkt. Nos. 77–78), but there is every reason to believe that, if the Brass Lion Defendants had demanded her dismissal prior to filing their motion, Grecia would have complied. Indeed, in his April 8, 2025 email to the Brass Lion Defendants' counsel (three days before the filing of the motion to dismiss), Grecia stated that he "intended . . . to voluntarily dismiss all parties" and had attempted (albeit unsuccessfully) to dismiss Bryna Smith. (Dkt. No. 55 Ex. 3).[8]

---

[8] In response to the Court's April 24, 2025 Order, Grecia initially indicated, in his May 8, 2025 letter, that he wished to continue to pursue his claims against Bryna Smith. (Dkt. No. 72). A mere five days later, however, Grecia again stated that he wanted to dismiss his claims against her (Dkt. No. 77), and he did dismiss his claims against her shortly thereafter (Dkt. No. 100).

Why the Brass Lion Defendants chose to file a motion to dismiss and seek sanctions under these circumstances, instead of following the path mandated by the Rule 11 safe harbor, is unclear. What is clear, however, is that under these circumstances it cannot be said that the attorneys' fees incurred by the Brass Lion Defendants in moving to dismiss were "incurred solely because of [Grecia's alleged] misconduct" in filing this lawsuit. *See Goodyear*, 581 U.S. at 103–04. To the contrary, it appears that the Brass Lion Defendants would not have incurred those fees had it sent a Rule 11 demand before, rather than after, filing its motion. Further, while Grecia filed other motions in this action (for a TRO, a preliminary injunction, and discovery), the Brass Lion Defendants did not incur any attorneys' fees in responding to these motions, as the Court disposed of them prior to the Brass Lion Defendants' appearance in the action and without requesting a response. (Dkt. Nos. 9, 17).[9] Accordingly, the essential causal connection between the alleged litigation misconduct and the Brass Lion Defendants' attorneys' fees is lacking, and an award of sanctions under the Court's inherent authority is unwarranted. *See Goodyear*, 581 U.S. at 109; *Rhee-Karn*, 797 F. Supp. 3d at 375.

It is therefore unnecessary to decide whether Grecia's claims against the Brass Lion Defendants were so meritless and improperly motivated as to justify a finding that they were brought in bad faith. For the sake of completeness, the

---

[9] As noted above and described further below, the Brass Lion Defendants also complain of allegedly false statements in other of Grecia's filings in this case. (Dkt. Nos. 85, 106). But Grecia did not seek or obtain any judicial relief through these filings and the Brass Lion Defendants do not claim to have incurred any expenses as a result of them. In any event, the Court does not find, by clear and convincing evidence, that these statements were part of "a deliberate and unconscionable scheme to interfere with the Court's ability to adjudicate [this] case fairly." *Braun*, 2015 WL 4389893, at *17.

Court will nonetheless consider that question.

Certainly Grecia's principal claim for breach of contract against Brass Lion lacked any legal or factual basis. That claim alleged that Brass Lion had disclosed confidential business information to Defendant Roc Nation and other parties in violation of the NDA. (Compl. ¶¶ 16–19). However, under the plain terms of that NDA, which Grecia himself attached to the Complaint, it was Grecia alone who had an obligation to keep confidential any relevant business information, and no such obligations were levied on the Brass Lion Defendants. (Compl. Ex. at 2–4; *see* Dkt. No. 9 at 2 n.1).

Beyond the difficulty that Grecia's breach of contract claim is directly contradicted by the terms of the contract he submitted, additional evidence suggests that Grecia brought this suit for purposes other than to win. As noted, in his April 8, 2025 email to the Brass Lion Defendants' counsel, Grecia stated that his "intention from the outset [of this case] was to engage the Court solely to place the NDA issue on record, then to proceed under an Article III claim with a formal election of my CVRA rights . . . . The next intended step was to voluntarily dismiss all parties[.]" (Dkt. No. 55 Ex. 3). This email supports the notion that Grecia did not intend to prevail on his claims.

Moreover, Grecia's filings since the Complaint do him no favors. Plaintiff has filed various documents with unsupported and often lurid charges against the Brass Lion Defendants, including (1) that the Smiths have conspired with others to steal Plaintiff's money and intellectual property, and to hire someone to murder him

22

(Dkt. No. 7, 26); (2) that Bryna Smith filed for an order of protection against him in New Jersey in retaliation for this case (Dkt. Nos. 26, 36); (3) that the Smiths stole his social security number and thereby committed the crime of identity theft (Dkt. Nos. 26, 27, 29, 59, 60); and (4) that the Smiths and Plaintiff were engaged in settlement discussions (Dkt. Nos. 45, 50, 57). The Brass Lion Defendants state that these allegations are false and entirely without basis. (Dkt. No. 71; Def. Reply at 2–3).

While a close call, the Court does not find that Grecia's actions rise to the level of bad faith required to award attorneys' fees under the Court's inherent authority. Grecia's purpose, to "place the NDA issue on record, then to proceed under an Article III claim," is obviously misguided and, so far as the Court can discern, incoherent as a matter of law. (*See supra* n.5). Nonetheless, taking into account Grecia's *pro se* status and his demonstrated willingness to promptly dismiss his claims against the Brass Lion Defendants voluntarily, it does not appear clear to this Court that Grecia brought this case to unnecessarily burden or harass the Brass Lion Defendants. And although the Brass Lion Defendants claim Grecia brought this case to "extort them into paying him to stop" (Def. Br. at 9), they provide no evidence to substantiate that claim. Consequently, the Court "is not convinced that Plaintiff brought this action in entirely bad faith, and it chooses to exercise restraint here as Plaintiff is *pro se* and does not [] appear to have been previously warned by this Court of the possibility of sanctions." *Thomas*, 2025 WL 2588749 at *16.

Grecia should not, however, expect similar leniency in the future. The Court now warns Grecia that courts "may not 'excuse frivolous or vexatious filings by *pro se* litigants,'" *Pahuja v. Am. Univ. of Antigua*, No. 11 Civ. 4607 (PAE), 2012 WL 6592116, at *1 (S.D.N.Y. Dec. 18, 2012) (quoting *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 529 n.1 (2d Cir. 2005)), and "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Should Grecia file claims lacking even a colorable basis in law or fact in the future, he should not be surprised if an award of sanctions follows.

## 2. Defendants' Request for a Litigation Bar

Separate from its request for attorneys' fees, the Brass Lion Defendants seek an anti-filing injunction, or so-called "litigation bar," against Grecia. Specifically, the Brass Lion Defendants seek to "prohibit [Grecia] from commencing any future litigation without [the Court's] permission." (Def. Br. at 10). In support, the Brass Lion Defendants allege that Plaintiff has a "long history of abusing the judicial process" through the filing of meritless complaints, argue that Grecia had "no objective good faith expectation of prevailing in this case" and "has caused needless expense to the Smiths and imposed an unnecessary burden on the Court and its personnel," and contend that monetary sanctions would be insufficient to dissuade Plaintiff in future filings. (*Id.* at 10–20).

Grecia makes three substantive arguments in response. First, Grecia argues that he has a constitutional right to access the courts, protected by the First and

24

Fourteenth Amendments, and that any restriction on that right must be narrowly tailored and based on compelling justification. (Pl. Opp. at 1). Plaintiff claims that he "brought this action in good faith, based on concrete legal claims," and a full litigation bar would "infringe on the right to petition the government and improperly hinder access to the judiciary." (*Id.*). Second, Grecia invokes the CVRA, claiming that the imposition of a litigation bar would "silenc[e] a federally protected crime victim from seeking lawful redress." (*Id.* at 1–2). Third, Grecia claims that the record does not support a filing injunction, as "Plaintiff has filed motions grounded in applicable law . . . and cited extensive precedent and public record evidence[.]" (*Id.* at 2). Grecia also requests that the Court not impose a litigation bar "without first holding a hearing on the matter, as required by due process." (*Id.*).

In their Reply, the Brass Lion Defendants argue that Grecia's citations "do not permit litigants to bring frivolous claims," even if they do have a constitutional right to access the courts in general. (Def. Reply at 6). The Brass Lion Defendants also point to emails Grecia sent to their counsel, which indicate that he does not respect rulings made by this Court. (*Id.*; *see also* Dkt. No. 107 ("Lifshitz Decl.") Ex. B at 2 & 5). Finally, the Brass Lion Defendants point to Grecia's continued filings in this case, making vague allegations of corruption and seeking material involving non-parties to this case. (Def. Reply at 6–7). The Brass Lion Defendants request the litigation bar to prevent Plaintiff from "us[ing] the federal courts as a vehicle for his various conspiracy theories." (*Id.* at 7).

"'Federal courts have both the inherent power and the *constitutional obligation* to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.'" *Woodhouse v. Meta Platforms Inc.*, 704 F. Supp. 3d 502, 513 (S.D.N.Y. 2023) (quoting *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984)) (emphasis in original). "[I]f a litigant has a history of filing 'vexatious, harassing, or duplicative lawsuits,' courts may impose sanctions, including restrictions on future access to the judicial system." *Hong Mai v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) (quoting *Iwachiw*, 396 F.3d at 528). "Because in issuing a filing injunction against a vexatious litigant, a district court acts 'not only as an arbiter of a dispute between private parties but also in defense of the means necessary to carry out [its] constitutional function,' the Second Circuit has held that 'the traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of [such] an injunction.'" *Woodhouse*, 704 F. Supp. 3d at 513 (quoting *In re Martin-Trigona*, 737 F.2d at 1262).

"A litigation bar, which restricts a litigant from making future court filings without obtaining court approval, is a 'drastic measure' that is warranted only when a district court is confronted with 'extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation.'" *Shukla v. Meta Platforms Inc.*, No. 23 Civ. 10150 (JGLC) (GS), 2024 WL 4108563, at *16 (S.D.N.Y. July 17, 2024) (first quoting *Sorenson*, 170 F. Supp. 3d at 626, and then quoting *Richardson Greenshields Sec., Inc. v. Mui-Hin Lan*, 825 F.2d 647, 652 (2d Cir. 1987)), *R&R adopted*, 2024 WL 3634796 (S.D.N.Y. Aug. 2, 2024); *see also Schisler v.*

26

*Rizio*, 6:17-CV-310 (MAD/ATB), 2017 WL 9509989, at *4 (N.D.N.Y. Mar. 24, 2017)

("An [anti-filing] injunction is reserved for 'extraordinary circumstances, such as a

demonstrated history of frivolous and vexations litigation . . . or a failure to comply

with sanctions imposed for such conduct.'" (quoting *In re Neroni*, 639 F. App'x. 9, 10

(2d Cir. 2015))).

The Second Circuit has "identified the following factors to be considered in

deciding whether to impose an anti-filing injunction: (1) the litigant's history of

litigation and in particular whether it entailed vexatious, harassing or duplicative

lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant

have an objective good faith expectation of prevailing?; (3) whether the litigant is

represented by counsel; (4) whether the litigant has caused needless expense to

other parties or has posed an unnecessary burden on the courts and their personnel;

and (5) whether other sanctions would be adequate to protect the courts and other

parties." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714 (2d Cir. 2019)

(quoting *Iwachiw*, 396 F.3d at 528).

### a. History of Litigation

While there is no "strict numerosity requirement that must be met before a

district court may exercise its discretion to enjoin a litigant from filing future

actions . . . the court must consider the record as a whole and the likelihood that the

litigant will continue to abuse the judicial process." *Eliahu*, 919 F.3d at 714 (citing

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

The Brass Lion Defendants argue that this factor weighs in favor of a

litigation bar because, they claim, Grecia is a "patent troll" who has "filed more than 100 complaints against various corporations and individuals; principally, frivolous and duplicative patent infringement claims." (Def. Br. at 12). To the best of the Brass Lion Defendants' understanding, "nearly all were dismissed without reference to any settlement, and in none does Grecia appeared to have prevailed." (*Id.* at 13).

Grecia's litigation history appears to be extensive, to say the least. However, Grecia's history differs from that of other litigants who have been subjected to anti-filing injunctions in that his prior lawsuits were not targeted towards the same set of facts or the same defendant or group of defendants. "[T]he cases in which courts have imposed a pre-filing injunction involve litigants who have been warned repeatedly not to pursue redundant and frivolous litigation, typically against the same or similar parties." *Cooksey v. Digital*, No. 14 Civ. 7146 (JKL), 2016 WL 5108199, at *8 (S.D.N.Y. Sept. 20, 2016) (collecting cases).[10] By contrast, so far as appears from the record, this is the *first* action brought by Grecia against any of the Brass Lion Defendants or arising from the facts alleged in the Complaint.

Moreover, other than citing the sheer number of actions previously filed by Grecia, the Brass Lion Defendants have not provided any non-conclusory facts

---

[10] *See also, e.g.*, *Eliahu*, 919 F.3d at 714 ("[T]he record contains several indications that Eliahu is likely to engage in further harassing, duplicative, and vexatious litigation against *these* defendants." (emphasis added)); *Shukla*, 2024 WL 4108563, at *17 (noting "Plaintiff's history of vexatious litigation against" his former employer, which included "the filing of duplicative suits in circumstances when Plaintiff is dissatisfied with the progress of a case already underway"); *El Bey v. City of New York*, No. 13 Civ. 8927 (AJN), 2015 WL 3526987, at *2 (S.D.N.Y. June 3, 2015) (granting a filing injunction where the plaintiff commenced "at least" ten proceedings regarding issues related to his employment and ultimate termination); *Lipin v. Hunt*, 573 F. Supp. 2d 836, 838 (S.D.N.Y. 2008) (noting that the plaintiff "has now filed six separate actions" based on the same core facts).

indicating that any particular action was frivolous or filed in bad faith.  The Brass Lion Defendants do not point to any finding to that effect by any of the courts that presided over these cases, or any form of sanctions award against Grecia, or even any warning previously issued to Grecia.  This Court will not wade through the dockets of the more than 100 cases cited by the Brass Lion Defendants to attempt to unearth evidence of misconduct that the Brass Lion Defendants themselves do not bring to the Court's attention.

Accordingly, the Court finds that this factor, based on the record provided by the Brass Lion Defendants, weighs against a litigation bar.  *See Cooksey*, 2016 WL 5108199, at \*8 (finding that *pro se* plaintiff's conduct and filings "do not rise to the level of warranting a pre-filing injunction" given that "this is the plaintiff's first litigation against the defendant" and action was being dismissed "at an early phase and the parties conducted no discovery").

### b. Motive

Courts in this Circuit have granted filing injunctions in matters where they found that the applicable party had no good faith expectation of prevailing, and denied filing injunctions where a party's bases were misplaced but made in good faith.  *See El Bey v. City of New York*, No. 13 Civ. 8927 (AJN), 2014 WL 5768985, at \*5 (S.D.N.Y. Oct. 31, 2014) (denying filing injunction when plaintiff "erroneously believed that he had a good faith basis to bring the present action based on what he claims is newly discovered evidence from a recent civil trial"); *Gertskis v. N.Y. Dep't of Health & Mental Hygiene*, No. 13 Civ. 2024 (JMF), 2014 WL 2933149, at \*6

29

(S.D.N.Y. June 27, 2014) (finding plaintiff "cannot have had an objective good faith expectation of prevailing" and granting a filing injunction when plaintiff filed a third similar suit containing many claims barred by *res judicata*).

As discussed above, the Court finds that Plaintiff likely did not have a good faith expectation of prevailing on the claims alleged in his Complaint. Nonetheless, however misplaced Grecia's reasons may have been for bringing this action, the Court does not find that Grecia brought the case purely to harass or burden Defendants, considering his *pro se* status and his prompt voluntary dismissal of his claims. Accordingly, the Court finds that this factor also does not support the granting of a litigation bar.

### c. *Pro Se* Status

"When the courts are used as 'a vehicle of harassment' by an 'experienced *pro se* litigant who asserts the same claims repeatedly in slightly altered guises,' the plaintiff's '*pro se* status is not an impediment to injunctive relief.'" *Shukla*, 2024 WL 4108563, at *18 (quoting *Colida v. Nokia Inc.*, No. 07 Civ. 8056 (KMW) (HBP), 2008 WL 4517188, at *15 (S.D.N.Y. May 6, 2008)). On the other hand, the Second Circuit has long recognized, including when considering a litigation bar, that *pro se* litigants are "entitled to special solicitude." *Eliahu*, 919 F.3d at 715; *see also In re Lewis*, No. 8:24-PF-2 (BKS), 2024 WL 4566550, at *3 (N.D.N.Y. Oct. 24, 2024) (finding *pro se* status weighed against litigation bar even though Plaintiff had filed over a dozen complaints).

Grecia's litigation history is extensive. Moreover, he has described himself,

30

in emails to the Brass Lion's counsel, as a "SDNY connoisseur" (Dkt. No. 70 Ex. A), and he appears to have filed at least twenty cases in this District within the last ten years (Def. Br. at 13–16). Although Grecia's claims in this case differ from his ordinary history with patent litigation, he shows sufficient familiarity with the court process and ordinary rules of procedure to not be viewed as an ordinary *pro se* litigant. Still, the Court recognizes that, typically, a litigation bar has not been imposed against a *pro se* litigant who has not previously been warned of that possibility. *See Cooksey*, 2016 WL 5108199, at *8. So far as the Court can tell, Grecia has never received such a warning. Accordingly, this factor also weighs somewhat against a litigation bar.

### d. Expense to other Parties and Burden on Court

With respect to the fourth factor, the Brass Lion Defendants have incurred some burden of litigation, although not nearly as much as other defendants where a filing injunction was issued. *See, e.g.*, *Shekhem El v. Hiller*, No. 24 Civ. 730 (KMK), 2025 WL 888544, at *8 (S.D.N.Y. Mar. 21, 2025) (distinguishing plaintiff's suit that did "not generate[] lengthy records or thousands of pages of documents" from a case where "'[d]efendants have incurred tremendous expense'" engaging in "'several rounds of briefing'" and handling up to "'2,800 pages of documents'"); *see also* *Eliahu*, 919 F.3d at 715 (imposing litigation bar where one plaintiff had "repeatedly sued the Israeli Officials across the United States despite decisions from several courts holding that they lack jurisdiction over these foreign defendants"). The expense faced by the Brass Lion Defendants and the burden on the Court here,

31

while not insignificant, differ from the typical case involving a litigation bar.  The "drastic measure" of a litigation bar "should only be imposed for more abusive litigation than [Plaintiff] has thus far exhibited."  *Cooksey*, 2016 WL 5108199, at *8. Accordingly, this factor weighs against the imposition of a filing injunction.

### e.  Whether other Sanctions Would Protect the Courts and Other Parties

Finally, the Court does not find that other sanctions would not protect the judicial system and other parties from improper filings by Grecia.  In particular, the Court does not find that the Brass Lion Defendants would not be protected through the threat of other sanctions.

Other courts imposing a litigation bar have done so in circumstances where a financial sanction could not be levied against an *in forma pauperis* party or where monetary sanctions had previously been issued.  *See, e.g.*, *Celli v. New York City*, No. 24 Civ. 9743 (JPC) (RWL), 2025 WL 1810365, at *17 (S.D.N.Y. May 27, 2025) (finding "no other sanctions will suffice" and "[m]onetary sanctions will be ineffective" when plaintiff filed *in forma pauperis* and had "repeatedly violated court orders and cannot reasonably be expected to adhere to measures short of a filing injunction"); *In re Weissbrod Gurvey*, No. 1:25-PF-1 (BKS), 2025 WL 1785132, at *5 (N.D.N.Y. June 27, 2025) (granting filing injunction after "monetary sanctions" and "strongly worded court warnings" were ineffective).

However, this Court has found no instances of another court specifically threatening sanctions against Grecia, financial or otherwise.  Further, Grecia has no demonstrated history of refusing to abide by court orders.  Accordingly, given the

32

special solicitude ordinarily due to *pro se* parties and the fact that this is his first suit against the Brass Lion Defendants, the Court believes a warning will be sufficient. Grecia is hereby put on notice that, should he bring separate litigation against the Brass Lion Defendants arising in whole or in part on the allegations and claims on which the instant action was based, financial sanctions, if not also a litigation bar, may be entered against him.[11]

Accordingly, for the above reasons, this Court recommends that the Brass Lion Defendants' request for a litigation bar be denied.

### C.    Plaintiff's Request for Sanctions

Grecia seeks sanctions against the Brass Lion Defendants' counsel for four reasons. First, Grecia alleges that counsel arranged a "false arrest scheme," timing the unlawful imprisonment of Plaintiff immediately before counsel's appearance in this case. (Pl. Mot. at 2). Second, Grecia alleges that counsel concealed his role in Plaintiff's incarceration and the present case, "withholding notice of representation until the 'trap' was complete." (*Id.* at 3). Third, Grecia claims that this false arrest "directly breached exclusive forum provisions" and was "calculated to interfere with SDNY's first-filed jurisdiction." (*Id.*). Finally, Grecia alleges that the arrest led to his incarceration for "50 days, during which federal filings were obstructed, causing both procedural and constitutional injury." (*Id.*).

---

[11] Grecia previously notified the Court that he "intend[ed] to file separate lawsuits in the future after DOJ concludes its criminal investigation and statutory enforcement action." (Dkt. No. 138 at 1). While the Court questions whether any such investigations are occurring, Plaintiff is hereby notified that this kind of lawsuit would be one that would create a risk that sanctions and/or a litigation bar will be imposed against him.

At the outset, it appears that Plaintiff also did not comply with Rule 11's safe-harbor provision, as he only served the Brass Lion Defendants a "detailed Rule 11 letter" and did not serve them with the motion for sanctions itself. (*See id.* at 1). As detailed above, the Second Circuit has found an award of sanctions after service of a warning letter only to be an abuse of discretion. See *Star Mark,* 682 F.3d at 175. Accordingly, for this reason alone, an award of sanctions against the Brass Lion Defendants' counsel is unwarranted.

However, even if the Court were to consider the merits of Grecia's motion given the special solicitude due to *pro se* litigants and the level of detail in the letter, the motion would have to be denied.

First, Grecia wholly fails to substantiate his allegations that the Brass Lion Defendants' counsel was involved in an illicit scheme to arrest Grecia. There is nothing unethical about asking a prosecutor and a court of appropriate jurisdiction to curb behavior which the Brass Lion Defendants found harassing. Given the independent levels of review required in order to obtain and enforce a protective order, the Court cannot assume that the Brass Lion Defendants' counsel did anything other than represent their clients in the ordinary manner. Moreover, Plaintiff's suggestion that counsel's actions were designed to prevent Grecia from pursuing this case finds no support in the record, particularly in light of Grecia's acknowledgment that he intended to voluntary dismiss his claims.

Second, even if there were some objectionable conduct, Grecia fails to explain how any of it fits under the Rule 11 umbrella. As the Brass Lion Defendants point

34

out, and as the Second Circuit has made clear, Rule 11 deals exclusively with "the certification flowing from the signature to a pleading, motion, or other paper in a lawsuit," *Oliveri*, 803 F.2d at 1274, and does not apply to filings in state courts. (Def. Opp. at 3; *see also Stiefvater Real Est., Inc. v. Hinsdale*, 812 F.2d 805 (2d Cir. 1987) (reversing district court's imposition of sanctions after removal based on complaint that was filed in state court)).  Grecia does not point to any filing made by the Brass Lion Defendants' counsel in this action that he even claims violated Rule 11.  For this reason as well, there is simply no basis for an award of Rule 11 sanctions against the Brass Lion Defendants' counsel.

As such, the Court respectfully recommends that Grecia's motion for Rule 11 sanctions be denied.

## CONCLUSION

For the foregoing reasons, this Court recommends that the Brass Lion Defendants' request for monetary sanctions be **DENIED** and their request for an anti-filing injunction against Grecia be **DENIED**.  Separately, for the reasons given below, this Court also recommends that Grecia's motion for Rule 11 sanctions be **DENIED**.

DATED:    New York, New York
             January 2, 2026

_____
The Honorable Gary Stein
United States Magistrate Judge

35

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties

shall have fourteen days, inclusive of weekends and holidays, from the date of this

Report and Recommendation to file written objections thereto.  *See also* Fed. R. Civ.

6(a), (b), and (d).  Any such objections shall be filed with the Clerk of Court.  Any

request for an extension of time to file objections must be directed to the Honorable

Jennifer H. Rearden.  A failure to file timely objections will preclude appellate

review.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v.*

*Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d

Cir. 2010).